UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-24535-CIV-ALTONAGA

**VICTOR MANUEL ALVAREZ PUGA**,

    Petitioner,
v.

**ASSISTANT FIELD OFFICE DIRECTOR,
KROME NORTH SERVICE PROCESSING
CENTER**, *et al.*,

    Respondents.
_____/

## ORDER

**THIS CAUSE** came before the Court on Petitioner, Victor Manuel Alvarez Puga's Verified Petition for Writ of Habeas Corpus [ECF No. 1], filed on October 2, 2025. Petitioner challenges his detention at the Krome Detention Center ("Krome") in Miami, Florida without being afforded an individualized bond determination. (*See generally id.*). Respondents filed a Response in Opposition to Petition [ECF No. 5], to which Petitioner filed a Reply [ECF No. 6]. The Court has considered the record, the parties' written submissions, and applicable law. For the following reasons, the Petition is granted in part.

### I. BACKGROUND

***Petitioner's Immigration History.*** Petitioner is a Mexican citizen, businessman, and entrepreneur. (*See* Pet. ¶¶ 11, 33). He has no criminal history in the United States. (*See id.* ¶ 36). Petitioner first entered the United States on January 14, 2021, as a nonimmigrant with authorization to remain in the country through July 13, 2021. (*See* Resp. 1).[1]

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

On July 9, 2021, Petitioner departed the United States for The Bahamas by plane. (*See id.* 2). Petitioner was scheduled to return to the United States by plane on July 21, 2021, but he did not board the plane. (*See id.*). Instead, he entered the United States by boat on July 10, 2021 and has remained here ever since. (*See* Pet. ¶ 33). Petitioner allegedly possessed a valid border-crossing card on July 10, 2021 but was not inspected by an immigration officer when he entered the United States that day. (*See id.* ¶ 34).

Petitioner applied for asylum with the United States Citizenship and Immigration Services ("USCIS") on July 11, 2022. (*See id.* ¶ 38). Petitioner's asylum application allegedly detailed the persecution that he and his family faced in Mexico based on their "conservative political beliefs" and set forth a "fear of returning to Mexico on account of his political opinion and membership in a particular social group." (*Id.*). To date, the USCIS has not interviewed Petitioner regarding his asylum application, and his application remains pending. (*See id.* ¶ 39).

***ICE Detains Petitioner.*** On September 24, 2025, United States Immigration and Customs Enforcement ("ICE") arrested and detained Petitioner under an arrest warrant. (*See id.* ¶ 40; *see also* Resp., Ex. D, Warrant [ECF No. 5-4]). Following his arrest, Petitioner was transferred to Krome — where he remains detained. (*See* Pet. ¶ 41).

On the day of Petitioner's arrest, ICE issued a Notice to Appear, charging Petitioner with removability under section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"). (*See* Resp. 2; *see also id.*, Ex. C, Notice to Appear [ECF No. 5-3]). That same day, ICE issued a Notice of Custody Determination stating that Petitioner was detained "[p]ursuant to the authority contained in section 236 of the Immigration and Nationality Act[,]" codified at 8 U.S.C. section 1226. (*See* Resp., Ex. F, Notice of Custody Determination [ECF No. 5-6] (alterations added)). On October 3, 2025, Petitioner sought a custody redetermination before the Executive

Office for Immigration Review ("EOIR"). (*See* Resp. 2). On October 7, 2025, ICE cancelled the Notice of Custody Determination, contending that Petitioner is detained "pursuant to INA [section] 235(b)(2)(A)[,]" codified at section 1225(b)(2)(A). (*Id.* 2 n.1 (alterations added); *see also id.*, Ex. B., Decl. of Deportation Officer Jocelyn L. Lopez ("Officer Lopez Decl.") [ECF No. 5-2] ¶ 13). Petitioner has a hearing scheduled before the EOIR on October 16, 2025.[2] (*See* Resp. 2).

***Petitioner's Habeas Petition.*** Petitioner raises two claims in his Petition. In Count One, Petitioner alleges that his continued detention without a bond hearing — based on the Government's determination that he is subject to mandatory detention — contravenes the INA, and he therefore requests an individualized bond hearing. (*See* Pet. ¶ 45; *see also id.* ¶¶ 46–48, 53). In Count Two, Petitioner asserts that he has been denied notice and a meaningful opportunity to be heard before a neutral decision-maker, in violation of due process. (*See id.* ¶¶ 55–58). Petitioner seeks an order: granting a writ of habeas corpus and directing Respondents to release him, or at a minimum, conduct a custody determination hearing under 8 U.S.C. section 1226(a); enjoining Respondents from transferring him outside this District; and awarding him fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412. (*See id.* 12).

Respondents contend that Petitioner has failed to exhaust his administrative remedies, and Petitioner's detention is lawful under 8 U.S.C. section 1225(b). (*See* Resp. 3–8).

## II. LEGAL STANDARD

District courts have the authority to grant writs of habeas corpus. *See* 28 U.S.C. § 2241(a). Habeas corpus is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*,

---

[2] Respondents state that Petitioner has a bond hearing scheduled before the EOIR on October 16, 2025; yet they also assert that he is "ineligible for a bond hearing." (Resp. 4). Petitioner insists that without a ruling from the Court, he will not be granted a bond hearing. (*See* Reply 3 n.2). Not having received information to the contrary, the Court assumes a bond hearing has not yet taken place.

3

553 U.S. 674, 693 (2008) (citation omitted).  A writ may be issued to a petitioner who demonstrates that he is being held in custody in violation of the Constitution or federal law.  *See* 28 U.S.C. § 2241(c)(3).  The Court's jurisdiction extends to challenges involving immigration-related detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

### III.  DISCUSSION

#### A.  Administrative Exhaustion

Respondents argue that Petitioner should have to exhaust administrative remedies before seeking habeas relief.  (*See* Resp. 3).  They contend Petitioner has a right to appeal his detention under 8 U.S.C. section 1225(b) to the Board of Immigration Appeals ("BIA") yet has not done so. (*See* Resp. 3).  Even so, Respondents appear to concede that exhaustion in this context is prudential rather than statutory.  (*See id.*).

Petitioner insists that exhaustion "serves no purpose" because "the conclusion of the administrative process can be readily presumed and would not provide for an adequate remedy" given the BIA's recent decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (B.I.A. 2025). (Reply 4).  In *Matter of Yajure Hurtado*, the BIA rejected the argument — like the argument Petitioner raises here — that a noncitizen who entered the United States without inspection and has resided in the country for years is not "seeking admission" under section 1225(b)(2)(A).  *See Yajure Hurtado*, 29 I&N Dec. at 221.  The Court agrees with Petitioner.

Generally, "exhaustion is not required where no genuine opportunity for adequate relief exists . . . or an administrative appeal would be futile[.]"  *Linfors v. United States*, 673 F.2d 332, 334 (11th Cir. 1982) (alterations added; citations omitted); *see also United States v. Barbieri*, No. 18-cr-20060, 2021 WL 2646604, at *2 (S.D. Fla. June 28, 2021) ("The Court recognizes . . . that administrative exhaustion may be unnecessary where the administrative process would be

4

incapable of granting adequate relief." (alteration added; citation omitted)). The BIA issued *Matter of Yajure Hurtado* as a published decision, and such decisions "serve as precedents in all proceedings involving the same issue or issues." 8 C.F.R. § 1003.1(g)(2); *see also id.* § 1003.1(d)(1). Thus, considering *Matter of Yajure Hurtado*, it appears evident that a noncitizen like Petitioner, who has resided in the United States for years but has not been admitted or paroled, will be subject to mandatory detention without bond under section 1225(b)(2) upon review by the BIA. *See Matter of Yajure Hurtado*, 29 I&N Dec. at 221.

Other district courts have similarly excused administrative exhaustion following the BIA's decision in *Matter of Yajure Hurtado*. *See, e.g.*, *Inlago Tocagon v. Moniz*, No. 25-cv-12453, 2025 WL 2778023, at *2 (D. Mass. Sept. 29, 2025); *Vazquez v. Feeley*, No. 25-cv-01542, 2025 WL 2676082, at *9–10 (D. Nev. Sept. 17, 2025). Since the result of Petitioner's custody redetermination and any subsequent bond appeal to the BIA is nearly a foregone conclusion under *Matter of Yajure Hurtado*, any prudential exhaustion requirements are excused for futility.

### B. Legality of Petitioner's Detention

#### i. Statutory Framework

Respondents contend that Petitioner's entry into the United States without inspection or admission renders him an "applicant for admission" under 8 U.S.C. section 1225(b)(2)(A), making him subject to mandatory detention and ineligible for a bond hearing. (*See* Resp. 4–8). Petitioner asserts that his detention is governed by 8 U.S.C. section 1226(a), which allows for the release of noncitizens on bond. (*See* Reply 6–11).

Under the INA, sections 1225 and 1226 govern the detention of noncitizens before a final order of removal. Section 1225 covers "applicants for admission" who are noncitizens "present in the United States who [have] not been admitted." *Gomes v. Hyde*, No. 25-cv-11571, 2025 WL

5

1869299, at *2 (D. Mass. July 7, 2025) (alteration in original; citation and footnote call number omitted). Section 1225(a)(3) requires all applicants for admission to be inspected by an immigration officer, *see* 8 U.S.C. § 1225(a)(3); and certain applicants for admission may be subject to removal proceedings under section 1225(b), *see id.* § 1225(b); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108–09 (2020) (citations omitted). "Because [s]ection 1225 is mandatory, a 'noncitizen detained under [s]ection 1225(b)(2) may be released only if he is paroled for urgent humanitarian reasons or significant public benefit.'" *Barrera v. Tindall*, No. 25-cv-541, 2025 WL 2690565, at *2 (W.D. Ky. Sept. 19, 2025) (alterations added; quoting *Gomes*, 2025 WL 1869299, at *1). Section 1225(b)(2) applies where an alien is "seeking admission" into the United States. 8 U.S.C. § 1225(b)(2)(A).

Unlike section 1225, section 1226 "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings[.]" *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (emphasis and alteration added). Section 1226(a) sets out a discretionary detention framework for noncitizens arrested and detained "[o]n a warrant issued by the Attorney General," 8 U.S.C. § 1226(a) (alteration added); and authorizes the Attorney General to "continue to detain the arrested alien[,]" release him on a "bond of at least $1,500[,]" or release him on "conditional parole[,]" *id.* § 1226(a)(1)–(2) (alterations added). While the arresting immigration officer makes an initial custody determination, noncitizens detained under section 1226(a) may appeal that determination in a bond hearing before an immigration judge. *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1). "Federal regulations provide that aliens detained under [section] 1226(a) may receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (alteration added; citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)); *see also Lopez Benitez v. Francis*, No. 25-Civ-5937, 2025 WL 2371588, at *13 (S.D.N.Y. Aug. 13, 2025) ("To be sure, a noncitizen detained under

6

[section] 1226(a) is undoubtedly entitled to a bond hearing before an immigration judge." (alteration added)).

### ii. Petitioner is Not Subject to Mandatory Detention Under Section 1225(b)(2).

Respondents contend that Petitioner qualifies as "an alien seeking admission under 8 U.S.C. § 1225(b)(2)(A)" — despite having been physically present in the United States for years before his arrest and detention — because section 1225(b)(2)(A) applies broadly to all applicants for admission. (*See* Resp. 12; *see also id.* 15). In contrast, Petitioner asserts that section 1225 applies only to noncitizens actively "seeking admission" at the border or its immediate functional equivalent. (*See* Pet. ¶ 48 (quotation marks omitted)).

Whether Petitioner is detained under section 1225(b)(2) or section 1226(a) is an issue of statutory interpretation that hinges on the meaning of "seeking admission." The Court thus applies traditional tools of statutory construction, beginning with the plain meaning of the statutes, to decipher the meaning of that phrase. *See Shotz v. City of Plantation*, 344 F.3d 1161, 1167 (11th Cir. 2003); *see also Fed. Election Comm'n v. Reform Party of U.S.*, 479 F.3d 1302, 1307 (11th Cir. 2007).

To begin, the phrase "seeking admission" is ambiguous in the context of the INA. *See* 8 U.S.C. §§ 1101, 1225. Section 1225 defines an "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States[.]" *Id.* § 1225(a)(1) (alterations added). And "admission" and "admitted" are defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13) (alterations added).

But the INA does not define "*seeking* admission." *Id.* § 1225(b)(2)(A) (emphasis added); *see generally id.* § 1101. Some courts have noted that the phrase "implies action — something

7

that is currently occurring, and . . . would most logically occur at the border upon inspection." *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379, at *6 (E.D. Mich. Aug. 29, 2025) (alteration added); *see also Rosado v. Figueroa*, No. 25-cv-02157, 2025 WL 2337099, at *11 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted*, 2025 WL 2349133 (D. Ariz. Aug. 13, 2025). And in the context of the title of section 1225, which references "arriving" aliens, § 1225; and its function — establishing an *inspection* scheme for when to allow aliens into the country — the language appears susceptible to multiple interpretations. *See Yates v. United States*, 574 U.S. 528, 537 (2015) ("The plainness or ambiguity of statutory language is determined not only by reference to the language itself, but as well by the specific context in which that language is used, and the broader context of the statute as a whole." (alterations adopted; quotation marks and citation omitted)).

Next, the Court turns to the structure of sections 1225 and 1226, as well as their legislative history — which each support Petitioner's interpretation. "Whereas [section] 1225 governs removal proceedings for 'arriving aliens,' [section] 1226(a) serves as a catchall." *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *5 (E.D. Mich. Sept. 9, 2025) (alterations added). As the Supreme Court noted in *Jennings*, section 1226 "creates a default rule" that "applies to aliens already present in the United States." *Jennings*, 583 U.S. at 303. The inclusion of a "catchall" provision in section 1226, particularly following the more specific provision in section 1225, is "likely no coincidence, but rather a way for Congress to capture noncitizens who fall outside of the specified categories." *Pizarro Reyes*, 2025 WL 2609425, at *5; *see also Barrera*, 2025 WL 2690565, at *4 (citation omitted). Certainly, the circumstances surrounding Petitioner's arrest by warrant align with section 1226(a), not section 1225(b)(2)(A).[3]

---

[3] Petitioner was arrested based on a warrant. (*See* Warrant). Several courts have suggested that section 1226 — not section 1225(b) — governs the detention of noncitizens who are arrested on a warrant while residing

Additionally, a recent amendment to section 1226 would be rendered meaningless under Respondents' interpretation of section 1225. *See Rosado*, 2025 WL 2337099, at *9. In January 2025, the Laken Riley Act ("LRA"), Pub. L. No. 119-1, section 2, 139 statute 3, 3 (2025), added section 1226(c)(1)(E), which "mandates detention for noncitizens who (i) "are inadmissible under [section] 1182(a)(6)(A) (noncitizens present in the United States without being admitted or paroled, like Petitioner), [section] 1182(a)(6)(C) ([obtaining a visa, documents, or admission through] misrepresentation [or fraud]), or [section] 1182(a)(7) (lacking valid documentation)" and (ii) "have been arrested for, charged with, or convicted of certain crimes." *Pizarro Reyes*, 2025 WL 2609425, at *5 (alterations added; citing 8 U.S.C. § 1226(c)(1)(E)(i)–(ii)).

If Respondents' interpretation of section 1225 is correct — that the mandatory detention provision in section 1225(b)(2)(A) applies to all noncitizens present in the United States who have not been admitted — then Congress would have had no reason to enact section 1226(c)(1)(E). *See Lepe v. Andrews*, No. 25-cv-01163, 2025 WL 2716910, at *6 (E.D. Cal. Sept. 23, 2025) (citations omitted). "[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant[.]" *Corley v. United States*, 556 U.S. 303, 314 (2009) (alterations added; citation and quotation marks omitted). "This principle . . . applies to interpreting any two provisions in the U.S. Code, even when Congress enacted the provisions at different times." *Bilski v. Kappos*, 561 U.S. 593, 608 (2010) (alteration added; citation omitted). "The Court will not find that Congress passed the [LRA] to perform the same

---

in the United States. *See, e.g.*, *Gomes*, 2025 WL 1869299, at *7; *Salcedo Aceros v. Kaiser*, No. 25-cv-06924, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025). Additionally, the Notice of Custody Determination issued by ICE on September 24, 2025 stated that Petitioner was detained "[p]ursuant to the authority contained in section 236 of the Immigration and Nationality Act[,]" codified at section 1226. (Notice of Custody Determination (alterations added)). ICE subsequently cancelled the Notice of Custody Determination as "improvidently issued" on October 7, 2025 — five days after Petitioner filed his Petition — on the ground that Petitioner is detained "pursuant to INA [section] 235(b)(2)(A)[,]" codified at section 1225(b)(2)(A). (Resp. 2 n.1 (alterations added); *see also* Officer Lopez Decl. ¶ 13).

work that was already covered by [section] 1225(b)(2)." *Maldonado v. Olson*, No. 25-cv-3142, 2025 WL 2374411, at *12 (D. Minn. Aug. 15, 2025) (alterations added; quotation marks omitted); *see also Lepe*, 2025 WL 2716910, at *6; *Barrera*, 2025 WL 2690565, at *4; *Rosado*, 2025 WL 2337099, at *9; *Pizarro Reyes*, 2025 WL 2609425, at *5; *Gomes*, 2025 WL 1869299, at *6–7.

Respondents' reliance on the BIA's decision in *Matter of Yajure Hurtado* — rejecting the argument that a noncitizen who entered the United States without inspection and has resided here for years is not "seeking admission" under section 1225(b)(2)(A) — is also misplaced. The Court need not defer to the BIA's interpretation of law simply because the statute is ambiguous. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413 (2024) ("[C]ourts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous." (alteration added)).

As explained, the statutory text, context, and scheme of section 1225 do not support a finding that a noncitizen is "seeking admission" when he never sought to do so. Additionally, numerous courts that have examined the interpretation of section 1225 articulated by Respondents — particularly following the BIA's decision in *Matter of Yajure Hurtado* — have rejected their construction and adopted Petitioner's. *See, e.g.*, *Jhon Peter Hyppolite v. Noem*, No. 25-cv-4303, 2025 WL 2829511, at *12 (E.D.N.Y. Oct. 6, 2025) (collecting cases); *Pizarro Reyes*, 2025 WL 2609425, at *7 (same); *Lepe*, 2025 WL 2716910, at *4 (same); *Barrera*, 2025 WL 2690565, at *5 (same). *But see Chavez v. Noem*, No. 25-cv-02325, 2025 WL 2730228, at *4–5 (S.D. Cal. Sept. 24, 2025) (citations omitted).

For these reasons, the Court finds that section 1226(a) and its implementing regulations govern Petitioner's detention, not section 1225(b)(2)(A). Petitioner is entitled to an individualized bond hearing as a detainee under section 1226(a).

### C. Due Process Violation

The Court declines to reach the merits of Petitioner's Fifth Amendment due process claim, as it is granting the relief he seeks in Count One. *See, e.g.*, *Pizarro Reyes*, 2025 WL 2609425, at *8. Should Respondents fail to comply with this Order by providing Petitioner a bond hearing, Petitioner may renew his due process claim. And because Count Two is an unripe claim contingent on Petitioner not receiving a custody determination hearing under 8 U.S.C. section 1226(a), "the Court must dismiss it without prejudice[.]" *Babilla v. Allstate Ins. Co.*, No. 20-cv-1434, 2020 WL 6870610, at *1 (M.D. Fla. Aug. 27, 2020) (alteration added; citations omitted); *see also Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all[.]'" (alteration added; quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)).

### IV. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Petitioner, Victor Manuel Alvarez Puga's Verified Petition for Writ of Habeas Corpus **[ECF No. 1]** is **GRANTED in part**. Respondents shall afford Petitioner an individualized bond hearing consistent with 8 U.S.C. section 1226(a) or otherwise release Petitioner.

2. Count Two is **DISMISSED without prejudice**.

**DONE AND ORDERED** in Miami, Florida, this 15th day of October, 2025.

**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:   counsel of record